UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| HENRY MORRISON, | ) | No. ED CV 08-00265-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.   The Administrative Law Judge ("ALJ") failed to properly

consider the opinion of his treating physician, Dr. Surdyka
(issues 1 and 2);

2.   The ALJ did not properly consider the opinion of State
Agency psychiatrist Dr. Michael;

3.   The ALJ did nor properly evaluate Plaintiff's testimony and
credibility;

4.   The ALJ did not properly evaluate Plaintiff's residual
functional capacity ("RFC"); and

5.   The ALJ did not properly consider side effects of prescribed
medications.


This Memorandum Opinion will constitute the Court's findings of
fact and conclusions of law.  After reviewing the matter, the Court
concludes that the decision of the Commissioner must be affirmed.


**I**

**THE ALJ DID NOT IMPROPERLY EVALUATE THE OPINION OF DR. SURDYKA**

Plaintiff's surgeon, Dr. Surdyka, performed a left total hip
arthroplasty in February 2002. (AR 416, 13, 195-196.)  In November
2003, Plaintiff underwent a right total hip arthroplasty. (AR 416.)

Three months after the first surgery, Dr. Surdyka assessed
Plaintiff's functional limitations, concluding that he was incapable
of climbing, stooping, kneeling, crouching, or crawling. (AR 196.)
The medical basis for this conclusion was asserted to be the surgery
on Plaintiff's left hip. (Id.)

Following the surgery on his right hip, Plaintiff was referred
for a complete orthopedic evaluation ("Orthopedic CE") by the
Department of Social Services. (AR 416-421.)  Dr. Meltzer performed a

complete examination and assessed that Plaintiff could sit, stand and walk an unlimited length of time in an eight-hour workday without any external support; should avoid irregular ground; could frequently climb, stoop and kneel and crouch, but should not crouch beyond 90 to 100 degrees to avoid the slight risk of dislocation.  Dr. Meltzer noted that Plaintiff can do a full squat without difficulty. (AR 420.)

At the hearing, Dr. Landau, the medical examiner ("ME"), assessed that Plaintiff can stand and walk for two hours out of eight, 15 to 30 minutes at a time on level ground and using a cane as needed; can sit for six hours out of eight with normal breaks; could lift and carry ten pounds frequently and 20 pounds occasionally; can occasionally stoop and bend, but can't squat, crouch, kneel or crawl.  He can climb stairs, but not ladders, cannot work at heights or balance and cannot operate motorized equipment. (AR 668.)

At the hearing, vocational expert ("VE") Porter answered a hypothetical question posed by the ALJ concerning the ability to work of a person who retains the RFC to perform limited light work.  The restrictions encompassed the ability to stand and/or walk 30 minutes at a time for a total of two hours in an eight-hour day; to sit six hours in an eight-hour day; limited push/pull ability in the legs; frequent ability to climb ramps and stairs but unable to climb ladders, scaffolds or rope; unable to balance, kneel or squat or crawl or walk on uneven terrain; occasionally able to stoop and crouch; may use a cane if needed. (AR 684.)

Finally, in his decision, the ALJ reviewed the medical evidence and determined that Plaintiff's RFC would enable him to lift 20 pounds occasionally and ten pounds frequently; stand two hours and sit six hours in an eight-hour workday with change of positions as noted;

1  inability to operate foot pedals and controls; occasionally able to
2  climb ramps and stairs but not ladders, scaffolds and ropes;
3  occasionally stoop and crouch but unable to balance, kneel/squat,
4  crawl and walk on uneven terrain; and use a cane as needed. (AR 18-
5  19.)

6      Plaintiff's assessment of error concerning the ALJ's decision is
7  that he failed to adopt Dr. Surdyka's assessment that Plaintiff had no
8  ability to climb, stoop, kneel, crouch or crawl. (JS at 3.)

9      Dr. Surdyka made his assessment three months after he performed
10  Plaintiff's left hip surgery.   The orthopedic CE, however, was
11  conducted after the later right hip surgery.   At that time, the
12  limitations assessed by Dr. Surdyka with regard to postural functions
13  were largely not found or observed by the orthopedist.

14      Shortly before the second surgery, Plaintiff completed a "Daily
15  Activities Questionnaire."   There, he indicated that he had no
16  difficulty in caring for his own personal needs, including grooming,
17  dressing and cleaning, although he believed that after his upcoming
18  operation he would need help in those areas. (AR 86.)

19      Twelve days later, Plaintiff completed another Daily Activities
20  Questionnaire.  He again indicated that he had no difficulty taking
21  care of his personal needs, although he believed that after the
22  upcoming surgery he would need help "washing my lower body, get up
23  [sic] and [illegible] also will need grabber device to put on pants,
24  shorts socks need family help putting on shoes and tying them." (AR
25  101.)

26      On October 18, 2002, Plaintiff received a complete psychiatric
27  evaluation ("psychiatric CE") at the request of the Department of
28  Social Services.  During his interview, Plaintiff indicated that he is

1  able to bathe and dress himself, do household chores, and cook. (AR
2  313.)

3      Considering this evidence, along with the rest of the evidence in
4  the record, in its entirety, it would appear that Dr. Surdyka's
5  limitations exceed even the limitations which Plaintiff self-assessed.
6  Dr. Surdyka wrote his evaluation approximately three months after
7  performing left hip surgery on Plaintiff.  The orthopedic CE, however,
8  was performed after both surgeries, and the clinical results reflected
9  significant functional abilities, in contrast to Dr. Surdyka's earlier
10  evaluation.  Despite the functional abilities revealed by Plaintiff's
11  own self-assessment, and those of the orthopedic CE, the ALJ adopted
12  a more conservative position in finding an RFC which limited Plaintiff
13  to an inability to perform certain postural functions. (See AR at 19.)
14  Moreover, those postural limitations were incorporated into the
15  hypothetical question posed at the hearing to the VE. (AR 684.)

16      The foregoing analysis reveals that the ALJ's rejection of the
17  full extent of Dr. Surdyka's limitations as observed in May 2002 was
18  based on a full and fair reading of the evidence in the case.
19  Certainly, the ALJ did not totally reject Dr. Surdyka's limitations,
20  even though these limitations exceeded Plaintiff's own assessment of
21  his functional abilities.  The Court rejects Plaintiff's assertion, as
22  set forth in his second issue, that the ALJ selectively misrepresented
23  Dr. Surdyka's opinion in order to support his own conclusion.

24

25  **II**

26  **THE ALJ DID NOT ERR IN HIS PSYCHIATRIC ASSESSMENT**

27      In his third issue, Plaintiff asserts that the ALJ erred in
28  rejecting the opinion of his "treating psychiatrist," Kenneth V.

Michael, M.D., that Plaintiff has moderate limitations in his ability to understand and remember detailed instructions; carry out detailed instructions; and interact appropriately with the public. (JS at 7.)

As the Commissioner notes, Dr. Michael is not Plaintiff's treating physician, but was, instead, a State Agency reviewing psychiatric consultant. (AR 197-215.) Moreover, Plaintiff ignores the fact that a subsequent State Agency psychiatric evaluation concluded that Plaintiff had only mild restrictions in his activities of daily living; maintaining social functioning; maintaining concentration, persistence or pace, and no reported episodes of decompensation. (AR 396-411.)

Finally, the later State Agency evaluation which reflected only mild limitations in these mental functioning areas is entirely consistent with the psychiatric CE, which concluded that in these functional areas, Plaintiff would have mild to no limitations.

For the foregoing reasons, there is no error in the evaluation of Plaintiff's mental condition.


### III

### THE ALJ MADE PROPER CREDIBILITY FINDINGS

Plaintiff testified to severe and chronic pain, an inability to concentrate, and problems with depression.  In the decision, Plaintiff complains that the ALJ limited his credibility finding to the following statement:

> "At the hearing, the claimant's statements regarding his symptoms and resulting limitations were partially, minimally credible, but not to the extent of establishing disability." (AR 16.)

Plaintiff fails to note the balance of the paragraph in the ALJ's decision regarding credibility, which sets forth a number of reasons. First, during part of the relevant disability period, Plaintiff collected unemployment benefits, and admitted that he reported on claim forms that he was available for work. (AR 16, 672-674.) Next, the ALJ noted Plaintiff's activities of daily living as he reported them to the psychiatric CE, and found that the extent of these activities was inconsistent with the subjective testimony, but was consistent with an ability to perform at least limited work activities. (AR 17.) Plaintiff's continued habit of smoking cigarettes even against medical advice was a credibility factor in that it possibly contributed to hypertension problems. (AR 17, 256.) Further, evidence of Plaintiff's non-compliance with medication usage was cited. (AR 17, 354.)

In all, the ALJ cited a number of appropriate credibility factors, and the Court, therefore, finds no error in the credibility analysis.

**IV**

**THERE IS NO ERROR WITH REGARD TO CONSIDERATION**

**OF PLAINTIFF'S PRESCRIBED MEDICATIONS**

Plaintiff notes that he reported "drowsiness/dizziness" in a pain questionnaire completed on October 10, 2003. (AR 83.) Citing Social Security Rule ["SSR"] 96-7p, he asserts that the ALJ failed to properly consider these side effects.

The Commissioner rightly points to the fact that in this voluminous record, there is no medical documentation whatsoever by any medical source of any side effects of medication. (JS at 17.)

7

Further, Plaintiff's non-compliance with medication usage has already been noted as an appropriate factor in the credibility analysis. (<u>See</u> 20 C.F.R. §§404.1530, 416.930.)

It is Plaintiff's burden to demonstrate that side effects of medication impaired his ability to work on a continuous basis. Self-serving statements may be disregarded if they are unsupported by objective findings. <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985).

In the absence of any objective medical evidence in the record concerning any deleterious side effects of medication, Plaintiff has failed to carry the issue, and the Court finds no error.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**


DATED: January 15, 2009                          /s/
                                        VICTOR B. KENTON
                                        UNITED STATES MAGISTRATE JUDGE